IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA16-911

Filed: 7 March 2017

Mecklenburg County, No. 15 CVS 8568

TOM KRAUSE, Plaintiff,

v.

RK MOTORS, LLC and WESTERN SURETY COMPANY, Defendants.

Appeal by plaintiff from order entered 7 June 2016 by Judge Hugh B. Lewis in Mecklenburg County Superior Court. Heard in the Court of Appeals 9 February 2017.

> *Blossom Law PLLC, by Rashad Blossom, and The Law Offices of Jason E. Taylor, by Lawrence B. Serbin, for plaintiff-appellant.*

> *Johnston, Allison & Hord, P.A., by Scott R. Miller and Martin L. White, for defendants-appellees.*

MURPHY, Judge.

Plaintiff Tom Krause ("Krause") appeals from the trial court's order granting RK Motors, LLC ("RK Motors") and Western Surety Company's (collectively "Defendants") motion for summary judgment. Specifically, he contends the trial court erred in granting Defendants' motion as the motion failed to state with particularity its bases, and in making findings of controverted fact and conclusions of law in its

order. Further, Krause argues that the trial court's grant of summary judgment in Defendants' favor as to his claims for fraud, unfair and deceptive trade practices, negligent misrepresentation, and breach of express warranty were unsupported by law.

RK Motors' counterclaim for unfair and deceptive trade practices remains before the trial court. Additionally, the trial court's order granting summary judgment retained jurisdiction over the case "for such other and further orders as may be necessary and appropriate including, but not limited, to orders for the award of attorneys' fees and recovery of costs." On these bases, the present appeal is interlocutory. Neither party has argued why this case is properly before us despite its interlocutory nature, and it is not the role of this Court to create an appeal for an appellant. Accordingly, we dismiss the appeal for lack of subject matter jurisdiction.

## Factual Background

Krause, a citizen and resident of California, was in the market to purchase a restored vintage performance automobile when he came across RK Motors' online listing for a 1967 Chevrolet Nova (the "Nova"). RK Motors is a North Carolina limited liability company located in Charlotte that holds itself out as a dealer of antique, collectible, and customized cars. Its website states that all cars in its showroom earn "the RKM Performance Center Seal of Approval, a comprehensive 70+ point

inspection performed by one of [the company's] ASE certified technicians where any major issues are found and addressed."

The listing described the Nova and also displayed several pictures as well as a video of the car. As alleged in Krause's complaint, between its posting and communications with him, RK Motors represented that the Nova: Had 137 miles on it; contained a 383 cubic inch small block V8 supercharged engine with 540 horsepower designed "to go straight at a very high rate of speed"; was professionally assembled and restored; would be an excellent car for someone looking for sheer performance; could be driven and enjoyed; was a "pavement-scorcher" with a six-figure build cost after months of skilled workmanship and hours of thorough detailing in accordance with exacting specifications; had a no-compromises, impressive drivetrain with momentum that perfectly complemented solid, undercoated floor plans and a long roster of serious speed equipment; included a transmission that executed "quick, efficient shifts on the heels of wheel stand-inducing launches"; was "fully sorted and ready to pound the pavement"; and was "ready to hit the road for Friday night cruises, Saturday morning poker runs or Sunday afternoon shows." The listing also reassured that RK Motors was a company of car enthusiasts who "know the kind of dedication a high dollar project takes."

Krause first contacted RK Motors regarding the Nova on 16 August 2013, and he was informed that there was a pending sale of the car. Unbeknownst to Krause,

when the other buyer arrived to pick up the Nova, it ran poorly, overheated, and was spewing radiator fluid after being driven only one-eighth of a mile. That buyer rescinded the contract to purchase the Nova on the spot.

Approximately one month later, Krause revisited the website and noticed the listing was still posted and the "pending sale" note had been removed. On 15 September 2013, Krause emailed Frank Carroll ("Carroll"), RK Motors' Vice President of Sales, and was told the earlier buyer's "wife had nixed the deal." Later, however, Carroll's story changed, and he reported that the previous buyer had "a bad record" with the bank, making it difficult for him to get insurance for a classic car. This change likely resulted from Carroll's tendency to, as he put it, "ma[k]e up something" when asked why a deal fell through.

Krause asked Dave Kindig ("Kindig"), a professional car builder, to review the listing and then contacted Carroll to ask a few questions about the Nova. Krause explained that he and Kindig had noticed the Nova had a crack in its lower-left-rear panel above the exhaust pipe, and he wanted to know what had caused the crack and whether it had been repaired. Carroll replied "that the [Nova]'s horsepower caused vibration that might have caused the crack," but the crack "had been repaired."

On 16 September 2013, RK Motors emailed Krause a number of documents pertaining to the proposed sale of the Nova, including a Bill of Sale and Odometer Disclosure Statement, both signed by the company's president. That paperwork

reiterated that there were 137 miles on the Nova. Based on RK Motors' advertisement, photographs, video, emails, verbal representations, Bill of Sale, and Odometer Disclosure Statement, Krause was induced to enter into the contract to purchase the Nova. He paid $67,000.00 to RK Motors in the form of a $1,000.00 down payment on 16 September, and wire transfers to RK Motors of $35,000.00 on 17 September and $31,000.00 on 1 October.

According to RK Motors' records, the company knew no later than 30 August 2013 that the Nova was running poorly and that "above half throttle . . . it spits and sputters and almost cuts off[,]" yet RK Motors concealed these facts from Krause and made false representations to him via email as to the condition of the Nova. On 17 September 2013, RK Motors wrote that "[t]he shop is going through the car and making sure it is running well. Giving it a tune up and checking things out. Everything looks good."

On 4 October 2013, Exotic Car Transport, Inc. picked up the Nova from RK Motors and transported it to Krause. Krause's first opportunity to inspect the Nova was 10 October 2013 when he took actual possession of the vehicle. Immediately upon taking possession of the Nova, Krause experienced problems with the car. The Nova idled too low and overheated after driving about three miles. Krause took the Nova to a mechanic who attributed the overheating to a broken cooling fan toggle switch. The same mechanic repaired the switch and adjusted the Nova's idle,

returning it to Krause the same day. However, when Krause attempted to drive the Nova, he experienced severe vibration and the belt for the supercharger and harmonic balancer fell off. On 12 October 2013, Krause had the Nova towed back to the mechanic.

This time, according to Krause, the mechanic discovered a bolt missing at the end of the harmonic balancer, a damaged crankshaft and supercharger, cracked cylinder heads, loose suspension bolts, a crushed front-right brake line, and a damaged transmission. In addition, the crack in the Nova's lower-left-rear panel, that Carroll reported had been fixed, still existed, and there was a similar crack in the lower-right-rear panel, as well. Upon further inspection by his mechanic, Krause learned that the Nova did not contain a professionally built 383 cubic inch small block engine, but rather a 350 Chevy stock engine with approximately 80,000 miles on it. On 15 October 2013, RK Motors sent him a Dealer's Reassignment of Title to a Motor Vehicle in which the company disclosed for the first time that the odometer reading of 137 miles did not reflect the actual mileage.

On 4 May 2015, Krause filed a complaint in Mecklenburg County Superior Court against RK Motors and the company's surety, Western Surety Company, asserting causes of action against RK Motors for (1) actual fraud/constructive fraud; (2) unfair and deceptive trade practices; (3) violation of the North Carolina Vehicle Mileage Act; (4) gross negligent misrepresentation/negligent misrepresentation; and

(5) breach of express warranty. Krause also asserted as the sixth count his right to recover from either RK Motors or Western Surety Company pursuant to N.C.G.S. § 20-288(e). Put simply, Krause alleged that he relied on RK Motors' false representations in deciding to purchase the Nova and that he could not have reasonably discovered the true condition of the Nova before purchasing it.

Defendants filed a motion to dismiss on 19 August 2015. After a hearing, the trial court granted Defendants' motion to dismiss Krause's cause of action for violation of the North Carolina Vehicle Mileage Act, but denied their motion to dismiss the remaining claims. On 10 November 2015, Defendants filed an answer, twenty-six affirmative defenses, and a counterclaim. Defendants contended that RK Motors' website specifically disclaims all warranties and noted that information contained thereon might be out of date or erroneous. Defendants also relied upon the fact that Krause executed a Buyer's Guide and Disclaimer of Warranties and Liability as part of the purchase. The Buyer's Guide stated that Krause agreed to buy the Nova "as is-no warranty," and that "dealer assumes no responsibility for any repairs regardless of any oral statements about the vehicle." The Disclaimer of Warranties and Liability also stated in pertinent part:

> Customer acknowledges and agrees that once any third party carrier secures the purchased Vehicle from RK Motors, Customer and/or such carrier bear all risk of loss if the Vehicle is lost, stolen, destroyed, or damaged in any way while in possession of such carrier and RK Motors has no risk of loss whatsoever under such circumstances.

4. Customer has had an opportunity to inspect and examine the Vehicle as fully as he/she desires, and, as such, the Vehicle is being sold by RK Motors to Customer in "as-is" condition, with all faults.

5. RK Motors makes no warranties whatsoever, whether express or implied, of merchantability, fitness for purpose, or otherwise, with respect to the Vehicle, and Customer hereby disclaims and waives all such warranties.

Prior to purchasing the Vehicle, Customer acknowledges that he/she has read and understands the above limitations and disclaimers, that they are terms and conditions of sale and that they constitute the entire agreement between the parties regarding warranties and any other liability.

Based on this language, Defendants alleged that Krause waived any right to recover for any of the false statements made to him.

Krause replied to RK Motors' counterclaim on 16 March 2016, and on 23 March 2016 Defendants filed a motion for summary judgment as to "all claims." Defendants amended their motion for summary judgment on 6 May 2016 to limit it to "all of Plaintiff's claims." At no time did Krause file a cross-motion for summary judgment.

On 7 June 2016, the trial court granted Defendants' motion for summary judgment on Krause's remaining claims. Notably, the order granting summary judgment failed to acknowledge or resolve RK Motors' counterclaim. It did explain, however, "[t]his cause is retained for such other and further orders as may be necessary and appropriate including, but not limited, to orders for the award of

attorneys' fees and recovery of costs." Krause gave notice of appeal from the order granting Defendants' motion for summary judgment on 30 June 2016.

## Analysis

At the outset, we note that the record establishes that the counterclaim has not been resolved and that the trial court has not relinquished jurisdiction. Accordingly, this appeal is interlocutory. *See Veazey v. City of Durham*, 231 N.C. 357, 362, 57 S.E.2d 377, 381 (1950) ("An interlocutory order is one made during the pendency of an action, which does not dispose of the case, but leaves it for further action by the trial court in order to settle and determine the entire controversy." (citation omitted)).

A party may immediately appeal an interlocutory order or judgment only if (1) the trial court certifies the case for immediate appeal pursuant to Rule 54(b) of the North Carolina Rules of Civil Procedure, or (2) if the trial court's decision deprives the appellant of a substantial right that would be lost absent immediate review. *Branch Banking & Tr. Co. v. Peacock Farm, Inc.*, ___ N.C. App. ___, ___, 772 S.E.2d 495, 498, *aff'd per curiam*, 368 N.C. 478, 780 S.E.2d 553 (2015). Rule 28(b)(4) of the North Carolina Rules of Appellate Procedure requires appellants to include a "statement of the grounds for appellate review." If the appeal is interlocutory, that statement must show that the trial court certified the case for immediate review, or

"contain sufficient facts and argument to support appellate review on the ground that the challenged order affects a substantial right." N.C. R. App. P. 28(b)(4).

Here, Krause's brief fails to contain the requisite statement of the grounds for appellate review. Furthermore, he declines to address the interlocutory nature of the appeal in the remainder of his brief. The order granting summary judgment in favor of Defendants contains no Rule 54(b) certification, and the briefs to this Court fail to make any argument as to why the order affects a substantial right.

"It is not the duty of this Court to construct arguments for or find support for appellant's right to appeal from an interlocutory order." *Jeffreys v. Raleigh Oaks Joint Venture*, 115 N.C. App. 377, 380, 444 S.E.2d 252, 254 (1994); *see also Viar v. N.C. Dep't of Transp.*, 359 N.C. 400, 402, 610 S.E.2d 360, 361 (2005) ("It is not the role of the appellate courts . . . to create an appeal for an appellant."). That burden rests solely with the appellant. *Jeffreys*, 115 N.C. App. at 380, 444 S.E.2d at 254. Accordingly, we are required to dismiss this appeal.

DISMISSED.

Chief Judge McGEE and Judge DAVIS concur.